**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Holly Chenail<br>c/o Zuzolo Law Offices, LLC<br>700 Youngstown Warren Road<br>Niles, Ohio 44446 | ) ) ) ) ) ) | Case No.:<br><br>Judge |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | **COMPLAINT**<br><br>**JURY DEMAND**<br>**ENDORSED HEREON** |
| Bayview Loan Servicing, LLC<br>c/o Marcel C. Duhamel, Esq.<br>Vorys, Sater, Seymour and Pease LLP<br>200 Public Square, Suite 1400<br>Cleveland, Ohio 44114 | ) ) ) ) ) ) | |
| and | ) ) | |
| M&T Bank<br>c/o Marcel C. Duhamel, Esq.<br>Vorys, Sater, Seymour and Pease LLP<br>200 Public Square, Suite 1400<br>Cleveland, Ohio 44114 | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d), and 15 U.S.C. § 1601 et seq.  Further, this Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

2. Venue in this judicial district is proper because Plaintiffs reside in this judicial district and many of the facts relevant to this Complaint occurred in this judicial district.

## PARTIES

3. Plaintiff, Holly Chenail, is a natural person who resides in the city of Lorain, county of Lorain, and state of Ohio. Plaintiff is a "consumer" as that term is defined under the Fair Debt Collection Practices Act ("FDCPA").

4. Defendant, Bayview Loan Servicing, is a foreign company doing business in the state of Ohio. Bayview is the servicer of Plaintiff's mortgage loan on behalf of M&T Bank. Bayview is a "debt collector" as that term is defined by the FDCPA because it took over the servicing of Plaintiff's loan while it was allegedly in default.

5. Defendant, M&T Bank, is a national bank doing business in the state of Ohio. M&T is the owner of Plaintiff's mortgage loan. M&T is a "creditor" as defined by the Truth in Lending Act ("TILA") because it regularly extends or offers to extend consumer credit payable in more than four installments and for which a financial charge is or may be imposed. Plaintiff believes this as M&T owns many mortgage loans. Further, M&T, as the owner of the loan, is the entity to whom the subject mortgage was made payable.

## STATEMENT OF FACTS

6. On May 4, 2009, Plaintiff filed a Chapter 7 bankruptcy under case number 09-13892.

7. The subject mortgage was included in Plaintiff's bankruptcy and was never reaffirmed.

8. On August 10, 2009, Plaintiff received her discharge from bankruptcy.

9. Bayview took over servicing of the subject mortgage in September of 2012.

10. Beginning in 2013, Bayview began calling Plaintiff's cell phone attempting to collect the subject indebtedness.

11. Plaintiff repeatedly told Bayview that she was represented by counsel, to remove all telephone numbers from her account, and to cease all phone calls to her cell phone.

12. As of January of 2014, Plaintiff received no less than 30 telephone calls to her cell phone from Bayview.  Plaintiff believes that most, if not all, of these phone calls were made using an automated dialing system and/or a prerecorded or artificial voice.

13. From January to April 25, 2014, upon information and belief, Plaintiff received no less than 15 telephone calls to her cell phone from Bayview.  Plaintiff believes that most, if not all, of these phone calls were made using an automated dialing system and/or a prerecorded or artificial voice.

14. On April 25, 2014, Plaintiff filed a lawsuit in this Court against Bayview and M&T for violations of the FDCPA, Telephone Consumer Protection Act, and Invasion of Privacy under Ohio law.  This lawsuit was case number 1:14-cv-00902.

15. On April 1, 2014, the Save the Dream program through the state of Ohio sent $2,257.64 to Bayview on Plaintiff's behalf to bring her loan current.  This amount was approximately $30 short of completely bringing the loan current.

16. On April 7, 2014, Plaintiff discovered, through her mortgage statement, that after the funds from the state, Bayview was saying she still owed approximately $500 to bring the loan current.  Therefore, Plaintiff believes Bayview misapplied the

state's payment as it should have been only $30 away from bringing the loan current, not $500.

17. Upon information and belief, since April of 2014, Bayview has misapplied each of Plaintiff's monthly mortgage payments, causing her account to incur unwarranted fees and costs.

18. From April 25, 2014 to February 11, 2015, while the federal lawsuit was pending, Bayview called Plaintiff's cell phone no less than 40 times.  Plaintiff believes that most, if not all, of these phone calls were made using an automated dialing system and/or a prerecorded or artificial voice.

19. During this time period, Plaintiff constantly told the caller that she was currently in a federal lawsuit against Bayview, she was represented by an attorney, and to stop all phone calls to her.

20. From February 11, 2015 to date, Bayview has called Plaintiff at least four times. Plaintiff believes that all of these phone calls were made using an automated dialing system.

21. Documents received from Bayview during the litigation showed that Plaintiff's file had a "do not call" listing but, despite this, the calls continued.  This further advances Plaintiff's belief that the calls were made using an automated dialing system.

22. On February 11, 2015, the parties decided to voluntarily dismiss the case.

23. The Defendants' actions have caused Plaintiff actual damages in the form of extra fees and costs being assessed to her mortgage for the misapplication in April 2014 and for having to engage counsel.   Plaintiff has also suffered severe non-

economic damages in the form of anger, stress, anxiety, embarrassment, frustration, and overall mental anguish for Bayview's complete disregard for her rights.

### COUNT I: FAIR DEBT COLLECTION PRACTICES ACT

24. Plaintiff alleges each and every preceding paragraph as if fully rewritten herein.

25. Bayview's actions violate the Fair Debt Collection Practices Act ("FDCPA") including, but not limited to:

    a.   15 U.S.C. § 1692c(a)(2): contacting a consumer after knowledge that he or she is represented by counsel;

    b.   § 1692d(5): causing the phone to ring or engaged any person in telephone conversations repeatedly;

    c.   § 1692e(2): misrepresenting the character, amount, or legal status of the alleged debt;

    d.   § 1692e(10): any false representation or deceptive means to collect a debt;

    e.   §1692f(1): attempting to collect any amount not authorized by agreement or permitted by law.

26. Over the last year, Bayview has called Plaintiff no less than 50 times trying to collect the subject debt.  Almost all of these phone calls were made while Plaintiff and Bayview were in the middle of a federal lawsuit.  Further, Bayview continued to call Plaintiff despite her telling the representative on numerous occasions that she was represented by counsel and to cease all phone calls.

27. Further, in April 2014, Bayview misapplied state funds that were to be applied to Plaintiff's loan to bring her within $30 of being current.  Instead, after the state

funds were applied, Bayview told Plaintiff she was still approximately $500 behind.  Further, each month since April 2014, Plaintiff believes that Bayview has misapplied all or some of her monthly mortgage payments, therefore, misrepresenting the amount owed on the account.

28. Plaintiff has been harmed by Bayview's violations of the FDCPA and is entitled to an award of statutory damages, actual damages, including non-economic damages for mental anguish, and attorneys' fees and costs pursuant to 15 U.S.C. § 1692l(a).

## COUNT II: TRUTH IN LENDING ACT

29. Plaintiff alleges each and every preceding paragraph as if fully rewritten herein.

30. The Truth in Lending Act ("TILA") provides the following:

> § 1026.36 Prohibited acts or practices in connection with credit secured by a dwelling.
> (c) Servicing practices.  For purposes of this paragraph (c), the terms "servicer" and
> "servicing" have the same meanings as provided in 12 CFR 1024.2(b).
> (1) Payment processing.  In connection with a consumer credit transaction secured by a consumer's principal dwelling:
> (i) Periodic payments.  No servicer shall fail to credit a periodic payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency, or except as provided in paragraph (c)(1)(iii) of this section.  A periodic payment, as used in this paragraph (c), is an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle.  A payment qualifies as a periodic payment even if it does not include amounts required to cover late fees, other fees, or non-escrow payments a servicer has advanced on a consumer's behalf.

31. In April 2014, the Save the Dream foundation tendered money to Bayview to bring Plaintiff's loan within $30 of being current.  However, upon information and belief, M&T Bank, by and through its agent Bayview, failed to credit the entire amount to

Plaintiff's loan as Bayview then indicated to Plaintiff that she was still approximately $500 past due.

32. Further, upon information and belief, Bayview has misapplied each of Plaintiff's monthly mortgage payments since April of 2014, causing unwarranted fees and costs to be assessed to the loan.

33. This misapplication by M&T has caused Plaintiff to lose the entire benefit of what the Save the Dream foundation did for her and also she has had to pay more money to try and bring everything current when it should have only been $30 had M&T did it properly in the first place.

34. Plaintiff is entitled to statutory damages up to $4,000 per violation and also any actual damages, including non-economic damages, and reasonable attorneys' fees and costs.

## COUNT III: TELEPHONE CONSUMER PROTECTION ACT

35. Plaintiff alleges each and every preceding paragraph as if fully rewritten herein.

36. The Telephone Consumer Protection Act ("TCPA"), under 47 U.S.C. § 227(b)(1)(A)(iii) makes it unlawful:

    a. To make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-…

        (iii) to any telephone number assigned to a … cellular telephone service … or any service for which the called party is charged for the call.

37. Bayview has called Plaintiff's cell phone no less than 90 times since 2012. Plaintiff believes that most, if not all, of these phone calls were made using an automated dialing system and/or prerecorded or artificial voice. Plaintiff believes

this based on delays between her or her voicemail answering and someone from Bayview speaking.

38. Bayview has called Plaintiff constantly despite Plaintiff telling the representatives on numerous occasions that it was to cease all phone calls to her cell phone. Further, Bayview's own records show that Plaintiff was not to be called; yet, the phone calls continue to date.

39. Under the TCPA, Plaintiff is entitled to $500 to $1,500 per telephone call for willful violations of the TCPA.

**COUNT IV: INVASION OF PRIVACY BY INTRUSION UPON SECLUSION**

40. Plaintiff alleges each and every preceding paragraph as if fully rewritten herein.

41. Bayview intentionally interfered, physically or otherwise, with Plaintiff's solitude, seclusion, or private concerns or affairs by repeatedly calling Plaintiff, totaling at least 90 times, over the course of approximately two years. Furthermore, Bayview called Plaintiff at least 40 times during a federal lawsuit that she filed against them for excessive phone calls.

42. Plaintiff had a reasonable expectation of privacy in her solitude, seclusion, or private concerns or affairs.

43. Bayview's intrusion into Plaintiff's privacy occurred in such a way that would be highly offensive to a reasonable person in Plaintiff's position.

44. First, Bayview knew that Plaintiff was represented by counsel based on the numerous times she had told it so, yet the calls continued.  Secondly, Bayview called Plaintiff no less than 40 times while a federal lawsuit was pending against it by Plaintiff because of the excessive telephone calls.  Lastly, Plaintiff has dealt

with this for at least two years and has constantly told Bayview to stop calling her, but the calls will not stop.

45. Plaintiff was damaged as a result of these excessive phone calls and is entitled to damages, costs, and attorneys' fees.

### TRIAL BY JURY

46. Plaintiff is entitled and hereby respectfully requests a trial by jury on each and every matter so entitled.  U.S. Const. Amend. 7.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, having set forth her claims against Defendants, respectfully prays of the Court has follows:

A.    For Count I, an award of statutory damages of $1,000; an award of actual damages, including non-economic damages; and an award of reasonable attorneys' fees and costs.

B.    For Count II, an award of statutory damages of $4,000; an award of actual damages, including non-economic damages; and an award of reasonable attorneys' fees and costs.

C.    For Count III, for an award of $500 per telephone call in violation of the TCPA and an award of $1,500 per telephone call found to be in willful violation of the TCPA.

D.    For Count IV, for an award of actual damages, including non-economic damages.

E.    For any other relief the Court deems appropriate.

Respectfully submitted,

/s/ Philip D. Zuzolo
Philip D. Zuzolo (0081865)
Patrick B. Duricy (0042511)
Ashley R. Hall (0092354)
Zuzolo Law Offices, LLC
700 Youngstown Warren Rd
Niles Ohio 44446
330/652-1609
330/652-9421
lawyers@zuzolo.com